DECISION
The University of Akron, defendant-appellant, appeals from the judgment of the Ohio Court of Claims. The trial court found Christopher Medvedeff, an employee of appellant, was not acting manifestly outside the scope of his employment pursuant to R.C. 9.86, and is entitled to personal immunity.
Medvedeff was a diving coach with appellant in 1999. On November 11, 1999, he met with Stacy Patena ("Stacy") at the Ocasek Natatorium, a swimming and recreation facility owned by appellant. Stacy, a junior in high school, was interested in diving. While at the Natatorium, Stacy was jumping on a trampoline as part of a diving skills evaluation and suffered a severe knee injury.
On October 4, 2000, Stacy and her parents, Gary and Alice Patena, plaintiffs-appellees, filed a complaint in the Ohio Court of Claims against appellant and Medvedeff. Appellees alleged in their complaint that Medvedeff was within the course and scope of his employment with appellant at the time Stacy was injured. Appellees further alleged that appellant and Medvedeff:
 [J]ointly and/or severally negligently and/or recklessly and with heedless disregard for the safety of Stacy Patena failed to properly monitor, supervise and/or safeguard Stacy Patena as she used the Trampoline, and further failed to use and instructed Stacy Patena not to use an available harness device to safeguard Stacy Patena against fall injuries.
Pursuant to R.C. 2743.02(E), the trial court dismissed Medvedeff as a party holding that only state agencies and instrumentalities can be defendants in original actions in the Court of Claims. On April 26, 2001, the court held a hearing in the presence of both parties and Medvedeff. The purpose of the hearing was to determine whether Medvedeff was acting within the scope of his employment when Stacy was injured. Testimony was given by Stacy, Medvedeff, Charles Kunsman, aquatics facility manager for the Ocasek Natatorium, Amanda Lemp, assistant aquatics manager for the Ocasek Natatorium, and Brian Verev, head swimming coach for appellant. After both parties submitted briefs concerning the issue presented at the April 26, 2001 hearing, the trial court held:
 Based upon the totality of the evidence presented at the hearing, the court finds that Medvedeff did not act manifestly outside the scope of his employment with [appellant] during the events at issue in this case. Consequently, Christopher Medvedeff is entitled to personal immunity pursuant to R.C. 9.86 and the courts of common pleas do not have jurisdiction over civil actions against him based upon his alleged actions and inactions in this case.
Appellant appeals this decision and presents the following assignment of error:
 THE TRIAL COURT ERRED WHEN IT FOUND THAT CHRIS MEDVEDEFF WAS A STATE EMPLOYEE ACTING WITHIN THE COURSE AND SCOPE OF HIS EMPLOYMENT AT THE TIME OF PLAINTIFF-APPELLEE'S INJURY.
Appellant argues in its assignment of error the trial court erred when it found that Medvedeff was acting within the scope and course of his employment when Stacy was injured. Appellant contends that Medvedeff was acting like a physician in private practice and that appellant received no financial gain from Stacy being at the Natatorium at the time of her injury.
State officers and employees are afforded immunity pursuant to the terms of R.C. 9.86, which states:
 [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.
The issue of whether R.C. 9.86 provides Medvedeff immunity must first be resolved in the Court of Claims because the state's liability is dependent upon whether a claimant proves that the employee would have personal liability for his acts or omissions but for the fact that the officer or employee has personal immunity. Potavin v. Univ. Med. Ctr. (Apr. 19, 2001), Franklin App. No. 00AP-715, unreported, following R.C. 2746.02(A)(2). The determination as to whether or not a person is entitled to immunity under R.C. 9.86 is a question of law. Smith v. Univ. of Cincinnati (Nov. 29, 2001), Franklin App. No. 01AP-404, unreported, following Nease v. Medical College Hosp. (1992),64 Ohio St.3d 396, 400. However, consideration of specific facts is necessary to the determination of immunity. Okereke v. Cent. State Univ. (Mar. 29, 2001), Franklin App. No. 00AP-686, unreported. "In this regard, matters involving credibility should be resolved by the trial court, and judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence." Caruso v. State (2000),136 Ohio App.3d 616, 620.
In the present case, the following evidence was presented supporting the trial court's finding that Medvedeff was acting within the scope of his employment when the injury occurred. Medvedeff was employed as the women's diving coach at the time of the accident. Medvedeff was a salaried employee who spent part of his time recruiting new divers for appellant. Medvedeff additionally owned and coached the Akron Rippers, a junior Olympic diving team. Medvedeff testified that the "main way that I do my recruiting is through the junior Olympic circuit, the meets, and by knowing of other coaches that coach junior clubs like my own." Medvedeff agreed with the statement that his "performance is very much evaluated based upon your success at recruiting."
Medvedeff testified that for the 1999-2000 academic year, one of his two divers had been recruited through the Akron Rippers. He testified that for the 2000-2001 academic year, another diver was recruited from the Akron Rippers. He also stated that at the time of trial, one hundred percent of the current women's diving team for appellant had been recruited from the Akron Rippers. Medvedeff further stated that one of the goals he had for recruiting was to observe divers during their junior year in high school and that he had more opportunities to observe the divers who were members of the Akron Rippers.
The Akron Rippers operated at the Natatorium which included a fifty meter pool, two one meter spring diving boards and three five meter diving boards. Medvedeff testified that he purchased a trampoline which was stored in the upper balcony area of the Natatorium. Medvedeff stated that he used the trampoline to train divers with both the Akron Rippers and for appellant. It was on this trampoline that Stacy was injured.
Stacy testified that she went to the Natatorium with a teammate "to go with her during her diving lesson to see if I liked it, and if I did, then I would join the class." Stacy stated that she assumed the lesson was a function affiliated with appellant and she assumed Medvedeff was the diving coach for appellant. She further testified that after Medvedeff asked her to jump on the trampoline, she "jumped on the trampoline maybe ten times or so, and during one of the jumps, that's when my knee gave out on me." Medvedeff testified that Stacy would have been a potential recruit for appellant's diving team assuming she had the requisite talent.
Generally, conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business. Mumford v. Interplast, Inc. (1997), 119 Ohio App.3d 724, 734. In the present case, the above evidence supports the theory that Medvedeff's actions at the time of the injury were in part initiated to further or promote appellant's interests: using the Akron Rippers as a way to recruit for appellant's diving team.
Accordingly, after having reviewed the record, we find that competent, credible evidence was presented going to all essential elements necessary to find that at the time of Stacy's injury, Medvedeff was performing his duties with appellant and his actions were not manifestly outside the scope of his employment. Therefore, Medvedeff is entitled to immunity pursuant to the terms of R.C. 9.86. Appellant's assignment of error is overruled, and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
TYACK, P.J., and BOWMAN, J., concur.